Christopher NUTT *v.* DELTA TRUST & BANK

CA 02-150                                    85 S.W.3d 927

Court of Appeals of Arkansas
Division IV
Opinion delivered October 2, 2002

*Cortinez Law Firm*, by: *Robert R. Cortinez*, for appellant.

*John Richard Byrd*, for appellee.

TERRY CRABTREE, Judge. Appellant, Christopher Nutt, appeals the trial court's decision granting the appellee's, Delta Trust & Bank, motion for summary judgment. Appellant argues three points on appeal: 1) that the trial court erred in ruling that the statute of limitations for a contract action barred any relief

prayed for by the appellant; 2) that the trial court erred by applying the law of contracts to the petition for contempt; and 3) that the trial court erred when it entered a judgment without setting forth specific findings of fact and conclusions of law after a timely request by the appellant. We agree with appellant's first two arguments and reverse and remand on those grounds. Due to our ruling, it is unnecessary to address appellant's final argument.

Appellant was orphaned at the age of fourteen. His father died when he was approximately ten years old. He was the beneficiary of half of his father's life insurance policy, totaling approximately $17,000. His mother, Wanda Nutt, petitioned the probate court to declare her the guardian of her son's estate and placed the money in its entirety in the Bank of Parkdale (now Delta Trust & Bank). The money, all in cash, was placed in a CD account. The probate court dispensed with the required guardianship bond when a letter, dated March 23, 1987, and signed by the executive vice-president of the bank, was filed with the probate court stating that the bank would not permit any of the funds to be withdrawn from the account without an order from the probate court. This agreement was pursuant to Ark. Stat. Ann. § 57-837, which is now Ark. Code Ann. § 28-65-215 (1987). The court order appointing Wanda Nutt as guardian, dated August 27, 1986, stated that the money deposited in the bank could not be withdrawn from the bank except on authority of a probate court order.

In August 1988, Wanda Nutt was in a hospital in Louisiana and was very ill. She signed a power of attorney for her sister, Shirley Pennington, allowing her to withdraw the funds from the CD account. There is no accounting of what happened to the money showing if it was spent on appellant's care. Wanda Nutt died in September 1988. Appellant was fourteen years old. He moved in with his aunt and her family. They lived in a house across the street from his family home. His mother left the house to him, but he was not to take possession of it until he was twenty-five years old. Shirley Pennington was made the successor guardian in 1990. Appellant lived in her house until he was almost nineteen years old. The abstract suggests that appellant attended a private school for the first three years of high school and that he did not finish his senior year but obtained his GED. Appellant

also testified in his deposition that his aunt was paying the mortgage on his family home. There is no information provided as to how much money the aunt spent providing care for her nephew. The aunt is not a party to this action and no information was provided as to her involvement in the spending of the $17,000 and accrued interest.

On January 13, 1998, the guardianship was terminated by order of the probate court. However, no final accounting of the minor's assets was prepared.[1] The order merely stated that the minor had reached the age of majority. Appellant began proceedings to have his family home placed in his name when he turned twenty-five years old. It was at this time, that his attorney discovered that the Delta Trust & Bank should have had an account for him with a balance of approximately $17,000 plus interest. The appellant petitioned the probate court to order the bank to release the funds to appellant because he had reached the age of majority. On October 31, 2000, the probate court issued an order demanding the bank to release the funds. On June 20, 2001, the appellant petitioned the probate court to hold appellee in contempt for not releasing the funds and to enforce the order of the court.

---

[1] In *Sample v. Sample*, 237 Ark. 178, 372 S.W.2d 609 (1963), the supreme court stated that until the guardian's liability had been established by an order of the probate court, no cause of action could be maintained against the sureties on the bond. *See Continental Ins. Companies v. Rowan*, 252 Ark. 980, 482 S.W.2d 102 (1972) (Holding that any legitimate claims should first be assessed against the guardianship estate, then if those funds are insufficient, judgment should be rendered against guardian and surety.); *Harrison v. Benton State Bank*, 6 Ark. App. 355, 642 S.W.2d 331 (1982). In the case at bar, we have no information as to the remaining assets of the guardianship estate, and how, if at all, the money was spent for the benefit of the appellant. Even though the appellee may have liabilities under Ark. Code Ann. § 28-65-215 (1987), they cannot be addressed by this court, or even the probate court, until a full and proper accounting has been given by the guardian of the appellant's guardianship estate. A full accounting must be filed and a hearing held by the probate court pursuant to Ark. Code Ann. § 28-65-320 (1987). The Arkansas Supreme Court has held that where a guardian fails to comply with the statutes regarding discharge and accounting, the guardian's surety is not released from liability on its bond. *Nabors v. Quick*, 245 Ark. 560, 433 S.W.2d 844 (1968). Although we do not address this issue in our holding, we think it important to note that the issues raised and the liabilities of the parties in this case could have been more thoroughly addressed by the trial court had the proper procedure of closing a guardianship estate been followed by the probate court.

The appellee filed a motion to strike and dismiss the motion for contempt, and it also filed a motion for summary judgment. The appellee claimed that, although the bank released the funds to Shirley Pennington on August 9, 1988, without a court order and based only on the power of attorney given by Wanda Nutt, that the statute of limitations for a contract action had expired and any claims by appellant were barred. On September 10, 2001, the probate court issued a letter opinion stating that this was a statute-of-limitation situation and that the motion for summary judgment was granted. Eleven days later, on September 21, 2001, the appellant objected to the order of the court and requested findings of fact and that the court reconsider its ruling. The court entered a final judgment on October 31, 2001. On November 8, 2001, the appellant again requested the court to reconsider its ruling and also requested that the court make findings of fact and conclusions of law. The court never responded to appellant's requests and on December 6, 2001, the appellant appealed the order granting the motion for summary judgment.

Appellant argues on appeal that the trial court erred in granting the motion for summary judgment based on the statute of limitations for contracts when the action before the trial court was one of contempt. We agree with appellant. The trial court could not apply the statute of limitations for a contract action to an action for contempt. The appellant's motion for contempt was based on the following facts: 1) by court order, dated October 4, 1986, the amount of $17,000 was deposited into the FDIC insured Bank of Parkdale by Wanda Nutt; 2) the court order stated that the funds were not to be withdrawn from the bank except by order of the probate court; 3) the funds were withdrawn by Shirley Pennington on August 9, 1988, without an order from the probate court; 4) the Bank breached its fiduciary duty to the probate court by releasing the funds without a court order to do so; and 5) that the Bank did not receive authority to release the funds until October 31, 2000.

Arkansas Code Annotated section 16-10-108(a)(3) (Repl. 1999), empowers every court of record to punish for criminal contempt. An act of contempt includes the wilful disobedience of any process or order lawfully issued or made by a court.

*Taylor v. State*, 76 Ark. App. 279, 64 S.W.3d 278 (2001). The power to punish for contempt is inherent in the courts, but that power should only be exercised when it is necessary to insure that the authority of the court is continued. *Id.* at 284, 64 S.W.3d at 282. The general rule is that before a person may be held in contempt for violating a court order, the order must be in definite terms as to the duties thereby imposed, and the command must be express. *Id.*

■ In the case at bar, the original order of the probate court, dated October 4, 1986, clearly states that the funds are not to be released by the Bank without an order from the probate court. There are no exceptions in the language of the court's order. The court's order, dated October 31, 2000, also clearly states that the Bank is to release the $17,000 plus interest to the appellant. The duties of the Bank were clearly stated in the first court order and the command not to release the funds without a court order was express. The Bank could not have been confused in any way as to what its responsibilities were concerning the $17,000 placed in its care for the future benefit of the appellant. It is also no justification to release the funds on the basis of a power of attorney when the person assigning the power of attorney also lacked the authority to withdraw the funds absent a court order.

■ The pleadings that the appellant set forth in his motion for contempt only address the action for contempt and nothing else. Appellant claimed in his pleadings that the Bank had a duty to the probate court not to release the funds and that it breached that duty. Appellant does not claim that a contract was breached, and makes no claims that the action before the court was one of contract. We hold that the trial court was erroneous in applying the statute of limitations for a contract action to an action for contempt. We reverse the trial court's order granting summary judgment and remand for a hearing on the contempt action.

Reversed and remanded.

STROUD, C.J., and BAKER, J., agree.