Cite as 2020 Ark. App. 391

# ARKANSAS COURT OF APPEALS
DIVISION III
**No.** CV-18-702

| | |
|---|---|
| FREDERICK R. POTTER, INDIVIDUALLY AND AS TRUSTEE OF THE FREDERICK R. POTTER REVOCABLE TRUST ESTABLISHED SEPTEMBER 10, 2004, AND AS TRUSTEE OF THE FRED POTTER REVOCABLE TRUST ESTABLISHED JULY 10, 2013 <br><br> APPELLANT <br><br> V. <br><br> CASSAUNDRA HOLMES, INDIVIDUALLY AND AS TRUSTEE OF THE BETTY L. POTTER REVOCABLE TRUST ESTABLISHED SEPTEMBER 10, 2004; THOMAS WRIGHT; AND KEVIN WRIGHT <br><br> APPELLEES | **Opinion Delivered:** September 9, 2020 <br><br> APPEAL FROM THE SCOTT COUNTY CIRCUIT COURT [NO. 64CV-13-54] <br><br> HONORABLE DAVID H. MCCORMICK, JUDGE <br><br> AFFIRMED; MOTION TO DISMISS DENIED |

## LARRY D. VAUGHT, Judge

The appellant, Fred Potter, appeals an order of the Scott County Circuit Court holding him in contempt. The order that Potter challenges is one of three contempt orders that the circuit court entered after Potter had repeatedly failed to comply with an "Order for the Partition Sale of Personal Property" ("partition order") that the circuit court entered on December 29, 2017.

Potter has separately appealed the contempt orders. We decide all the appeals in separate opinions that we issue today. *See Potter v. Holmes*, 2020 Ark. App. 383, 608 S.W.3d

618; *Potter v. Holmes*, 2020 Ark. App. 388, 609 S.W.3d 404. Here, we address his challenge to the first order in the series, which the circuit court entered on May 16, 2018. Potter argues that the circuit court abused its discretion when it did not allow him to introduce testimony demonstrating that he did not willfully disobey the partition order. He also asserts that the contempt finding is not supported by sufficient evidence. In a motion to dismiss that was submitted with the appeal, Holmes argues that we should dismiss the appeal for lack of jurisdiction because the May 16, 2018 contempt order is not a "final disposition of the contempt matter" as required by Ark. R. App. P.–Civ. 2(a)(13) (2019). We deny the motion to dismiss and affirm.

## I. *Factual Background*

We set forth the detailed factual background of the contempt orders in *Potter v. Holmes*, 2020 Ark. App. 383, at 6–10, 608 S.W.3d at 623–25, whose record overlaps with the record here. To summarize for purposes of this appeal, Potter and his wife, Betty, transferred certain items of personal property into reciprocal mirror-image trusts in 2004. The trusts provided that four members of Betty's family and one member of Potter's would receive the residuary principal assets from both trusts.[1] Betty died in 2013, whereupon appellee Cassaundra Holmes succeeded her as trustee of Betty's Trust.

The relationship between Potter and Holmes grew acrimonious after Betty's death. Potter filed a complaint alleging that Holmes had breached her fiduciary duties as the trustee of Betty's Trust, and Holmes filed a counterclaim alleging breach of fiduciary duty, breach

---

[1]The five trust beneficiaries include appellee Cassaundra Holmes as well as appellees Thomas Wright and Kevin Wright. Vernon Wright and Allen Potter are the other two beneficiaries.

of contract, and conversion. Potter also used various methods to defy the circuit court's orders and repeatedly interfered with Holmes's attempts to inventory the property in trust, including removing all the items of personal property from his and Betty's house in Waldron.

On September 7, 2017, shortly after we issued our opinion concluding their other litigation, *see Holmes v. Potter*, 2017 Ark. App. 378, 523 S.W.3d 397, Holmes filed a "Motion for Partition of Personal Property" asserting that Betty's Trust and Potter's Trust were "in conflict" over the appropriate division of the personal property—listed in the motion—that had been removed from Potter's house in Waldron. Accordingly, she requested a judicial sale of the property and equal division of the net proceeds.

The circuit court entered an order granting the motion on December 29, 2017. In the order, the court directed Potter to return the personal property listed in the motion, as well as in a five-page attachment to the order, within ten days. The court further ordered Potter to "put each item of personal property back to where it was" in the house, and to "notify [Holmes] of the date and time of return delivery of the personal property." The court also required Potter to "prepare and provide in advance to [Holmes] a detailed, itemized list of all of the personal property which [Potter] is returning to the house and property [in Waldron]." The order also provided that the property was to be auctioned once it was returned.

On February 8, 2018, Holmes moved to hold Potter in contempt. She alleged that despite the court's partition order, she "ha[d] not received notice of the date and time of the return delivery of the personal property" or "the detailed, itemized, list of all personal

property which [Potter] is returning to the house and [real] property [in Waldron]." Holmes further alleged that she "did not receive notice that all of the personal property has been moved back to [Waldron] so that [she] may secure the personal property." She requested, therefore, that Potter be held in contempt and "punished accordingly," including the immediate transfer of all the personal property to her care and control so that it could be sold at a partition sale.

The circuit court heard the motion for contempt on May 10, 2018. At the hearing, Potter admitted, through counsel, that he failed to return all the personal property listed in the partition order. He asserted, however, that there were "various reasons for that," including that many items on the list "simply did not exist"; therefore, even if Potter returned everything in his possession, he still "would never be able to comply with [the] list." Potter's counsel conceded, however, that Potter also failed to return all the clearly extant items that were in his possession. Accordingly, the circuit court found Potter in willful contempt of its orders, observing from the bench that Potter has "done everything he can do to frustrate" the court's orders from the "very inception" of the case.

The circuit court memorialized its finding of willful contempt in an order entered on May 16, 2018. The order provided that Potter had until the close of business on May 17, 2018, to comply with all of its directives. The order also provided the following:

> The court finds and orders that should [Potter] fail, refuse, or neglect in any manner to fully and completely comply with this court's orders by 5:00 on Thursday, May 17, 2018, then [Potter] is ordered to personally report to the Scott County Sheriff at 8:00 am on Friday, May 18, 2018, to be jailed and incarcerated in the Scott County Jail and detained in custody, to only be released upon [Potter] having purged himself of the contempt by specifically and fully complying with all of the court's [partition order] filed herein on December 29, 2017.

4

The court also ordered Potter to reimburse Holmes for her attorney's fees and costs "due to his willful contempt." Potter now appeals this order.

## II. *Discussion*

### A. Finality

Before proceeding to the merits, we address Holmes's argument that the case should be dismissed for lack of a final order. According to Holmes, the May 16 contempt order is not a "final disposition of the contempt matter" because it was followed by Potter's continued disobedience and further judicial action—namely, another contempt order the circuit court entered on June 26, 2018. Potter responds that the May 16 order is indeed final because it finds him in contempt and imposes sanctions. We agree that we have jurisdiction.

"In order for a judgment to be final, it must dismiss the parties from the court, discharge them from the action, or conclude their rights to the subject matter in controversy." *Taylor v. Taylor*, 26 Ark. App. 31, 33, 759 S.W.2d 222, 223 (1988). An appeal may be taken from a civil or criminal contempt order, which imposes a sanction and constitutes a final disposition of the contempt matter. Ark. R. App. P.–Civ. 2(a)(13) (2019). The May 16 order finds Potter in contempt, which we have held is itself "a final disposition of the contempt matter as between the appellant and the court." *Taylor*, 26 Ark. App. at 33, 759 S.W.2d at 223. The order also imposes sanctions, including reimbursement of Holmes's attorney's fees and costs and incarceration in the Scott County jail in the event that Potter continues to disobey the partition order. Therefore, we conclude that we have jurisdiction under Rule 2(a)(13) and deny Holmes's motion to dismiss the appeal.

B. Evidentiary Issue

As we note above, Potter first argues that the trial court abused its discretion when it excluded evidence—namely his and Allen Potter's testimony that would have established he did not have any knowledge of the "existence or whereabouts" of the trust property that the partition order directed him to return. He claims that the circuit court erroneously viewed his argument as a challenge to the court's previous ruling—in the partition order—that the property belonged to the trusts. He insists that his purported lack of knowledge concerning the existence and whereabouts of the property—even if it actually belonged to the trusts as the circuit court determined—was relevant to show that he did not willfully disobey the partition order. We affirm.

We review evidentiary errors under an abuse-of-discretion standard, and the circuit court's findings will not be disturbed on appeal unless there has been a manifest abuse of discretion. *Martinez v. Wright*, 94 Ark. App. 1, 3, 223 S.W.3d 71, 73 (2006). We will not find an abuse of discretion, moreover, unless a circuit court acted "improvidently, thoughtlessly, [or] without due consideration." *Milner v. Luttrell*, 2011 Ark. App. 297, at 3, 384 S.W.3d 1, 3.

At the hearing, Potter argued that he did not willfully disobey the partition order. He claimed that he and Allen Potter, his nephew, could testify that "many of the items on the list [in the partition order] simply don't exist, and have not existed." The circuit court declined to hear the testimony, observing that it had already "made a finding of what's there" in the partition order and was not "going back into does it exist or does it not." The

court ruled, rather, that any evidence at the contempt hearing should be limited to "is it returned or is it not, and when will it be."

We do not see any abuse of discretion. The court considered Potter's argument and determined that the partition order had already settled that he was capable of returning the trust property, and it was inappropriate to relitigate the issue in the contempt hearing. That is consistent with the well-settled rule that the validity of the underlying order is not at issue in contempt proceedings. *See Johnson v. Johnson*, 343 Ark. 186, 197, 33 S.W.3d 492, 498 (2000) ("The fact that a decree or order is erroneous does not excuse disobedience on the part of those bound by its terms."). Therefore, we cannot agree that the circuit court acted "improvidently, thoughtlessly, [or] without due consideration," *Milner*, 2011 Ark. App 297, at 3, 384 S.W.3d at 3, when it declined to hear the testimony.

In any event, an evidentiary ruling does not warrant reversal without a showing of prejudice, *see Webb v. Thomas*, 310 Ark. 553, 558, 837 S.W.2d 875, 877 (1992), and other evidence indicated that Potter willfully violated the court's partition order. Indeed, his counsel admitted that Potter did not return all the trust property that he had in his possession, and presumably, knew about. We decline, therefore, to reverse for this alleged evidentiary error.

## C. Sufficiency of the Evidence

Potter next argues that the contempt finding is not supported by sufficient evidence. He suggests that he was found in criminal contempt—and therefore was entitled to the higher beyond-a-reasonable-doubt standard of proof—because the circuit court's order to incarcerate him demonstrated its intent to punish, rather than simply to persuade him to

7

comply with the partition order. Potter also asserts, however, that the evidence was insufficient even if the court applies the less demanding preponderance-of-the-evidence standard for civil contempt. We disagree.

"Disobedience of any valid judgment, order, or decree of a court having jurisdiction to enter it may constitute contempt, and punishment for such contempt is an inherent power of the court." *Balcom v. Crain*, 2016 Ark. App. 313, at 3, 496 S.W.3d 405, 407. Contempt can be either civil or criminal. *Id.* at 3–4, 496 S.W.3d at 407. Criminal contempt imposes an unconditional penalty that is "solely and exclusively punitive in character." *Id.* at 4, 496 S.W.3d at 407. "A conditional penalty, by contrast, is civil because it is specifically designed to compel the doing of some act." *Id.* Furthermore, "[b]ecause civil contempt is designed to coerce compliance with the court's order, the civil contemnor may free himself or herself by complying with the order." *Id.* Stated another way, civil contemnors "carry the keys of their prison in their own pockets," and the nature of civil contempt "can be either compensatory or coercive in nature." *Id.* at 4, 496 S.W.3d at 408. To establish civil contempt, there must be willful disobedience of a valid court order. *Id.*

We hold that the circuit court found Potter in civil contempt. The contempt order demonstrates that the circuit court intended to compel compliance with its earlier partition order. A circuit court may use imprisonment as punishment for civil contempt, *see Albarran v. Liberty Healthcare Mgmt.*, 2013 Ark. App. 738, at 7, 431 S.W.3d 310, 314, and the court here did not order immediate incarceration, giving Potter until the close of business on May 17, 2018, to "specifically and fully comply" with all the directives in the partition order. Additionally, in the event that Potter did not timely comply, the circuit court ordered him

to report to the Scott County jail or post a $25,000 bond "only to be released upon . . . purging himself of the contempt by . . . complying with the [partition order]." The circuit court also set a status hearing for June 4, 2018, to determine "the status of [Potter's] compliance," again indicating that the ultimate object of the sanction was to compel Potter to obey the partition order. The sanction of attorney's fees and costs, moreover, was payable directly to Holmes and had the compensatory purpose of reimbursing her for the costs associated with Potter's willful conduct.

We will not reverse a circuit court's finding of civil contempt unless that finding is clearly against the preponderance of the evidence. *Omni Holding & Dev. Corp. v. 3D.S.A., Inc.*, 356 Ark. 440, 449, 156 S.W.3d 228, 234 (2004). A finding is clearly against the preponderance of the evidence if, although there is evidence to support it, the reviewing court on the entire evidence is left with a firm conviction that a mistake has been committed. *Wyatt v. Wyatt*, 2018 Ark. App. 149, at 6, 541 S.W.3d 504, 507. Issues of credibility, however, are for the fact-finder. *NAACP v. Bass*, 2017 Ark. App. 166, at 8, 519 S.W.3d 336, 341.

Civil contempt is established when there is a willful disobedience of a valid court order, *Albarran*, 2013 Ark. App. 738, at 4, 431 S.W.3d at 313, and a preponderance of the evidence supports the circuit court's finding that Potter was willfully disobedient. The order was clear in its terms and express in its commands. As set forth above, the order directed Potter to return the listed items of personal property within ten days. The court further ordered Potter to "put each item of personal property back to where it was" in the house and to "notify [Holmes] of the date and time of return delivery of the personal property."

The court also required Potter to "prepare and provide in advance to [Holmes] a detailed, itemized list of all of the personal property which [Potter] is returning to the house and property [in Waldron]." Moreover, while Potter insists that the circuit court erroneously determined that the items listed in the partition order belonged to the trusts, we reiterate that we will not look behind the partition order to determine whether it was valid. *Johnson*, 343 Ark. at 197, 33 S.W.3d at 498.

Further, the circuit court did not err by finding Potter in contempt in the absence of testimony, as he contends. The analysis of whether a litigant willfully violated a court order "properly encompasses the [litigant's] behavior in related incidents such as disobedience or resistance to other orders of the court," *Wright v. Nichols*, 80 F.3d 1248, 1252 (8th Cir. 1996), and dating back to his repeated interference with Holmes's attempts to inventory the trust property, Potter had a long history of disregarding the court's orders. The statements of counsel also can bind clients in appropriate cases, *see Chicago, R. I. & P. Ry. Co. v. Bunch*, 82 Ark. 522, 524, 102 S.W. 369, 370 (1907), and Potter's counsel made a judicial admission that Potter did not return all the items in his possession as the partition order required him to do. *See State Farm Mut. Ins. Co. v. Worthington*, 405 F.2d 683, 686 (8th Cir. 1968) (a judicial admission does away with the need for evidence in regard to the subject matter of the admission). A preponderance of the evidence, therefore, supports the finding of contempt.

### III. *Conclusion*

We have jurisdiction of this appeal under Ark. R. App. P.–Civ. 2(a)(13) because the contempt order is a final disposition of the contempt matter and imposes sanctions.

10

Regarding the merits, the circuit court did not abuse its discretion when it refused to hear testimony that Potter was not capable of returning some of the trust property because he allegedly did not know of its "existence or whereabouts," and Potter cannot show prejudice in any event because he admitted that he did not return items that were in his possession. The circuit court's finding of contempt, moreover, is supported by a preponderance of the evidence.

Affirmed; motion to dismiss denied.

GLADWIN and SWITZER, JJ., agree.

*Kevin L. Hickey*, for appellant.

*Skinner Law Firm, P.A.*, by: *Jack Skinner*, for appellee Cassaundra Holmes.